UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JEREMIAH DWYER,

    Plaintiff,

v.                                                                                  Case No.:  6:21-cv-2074-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

Jeremiah Dwyer sues under 42 U.S.C. § 1383(c)(3)[1] to review the Commissioner of Social Security's decision denying his application for supplemental security income. (Doc. 1.) For the reasons below, the Commissioner's decision is reversed and remanded for further administrative proceedings.

### **I. BACKGROUND**

In April 2018, Dwyer applied for social security benefits, claiming he could no longer work because of depression, autism, maculopathy, and post-traumatic stress disorder. (Tr. 325–29, 387.) The Commissioner denied Dwyer's claims both initially and upon reconsideration. (Tr. 118–19, 133–34,

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

150–51.) He then requested further review before an administrative law judge. (Tr. 166–67.)

Following a hearing, the ALJ found Dwyer not disabled. (Tr. 12–25.) To make this finding, the ALJ performed the multi-step evaluation process in 20 C.F.R. § 416.920(a). (Tr. 17–25.) The ALJ determined that Dwyer had the following severe impairments: depression, anxiety, autism, and PTSD. (Tr. 17.) Notwithstanding the noted impairments, the ALJ found that Dwyer did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18–19.) The ALJ also found that Dwyer retained a residual functional capacity (RFC) to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> The claimant can perform simple routine, competitive, low-stress, repetitive tasks on a sustained basis over an 8-hour workday in a stable work environment, with no more than simple decision making required. He can have occasional interpersonal interaction with co-workers, occasional interaction with supervisors, and no interaction with the public. He is unable to perform complex and detailed tasks or to meet fast-paced, high production demands. He should be in an environment with no more than occasional changes in the workplace. The claimant would work better with things rather than people.

(Tr. 19–20.)

Considering Dwyer's RFC and the assessment of a vocational expert, the ALJ concluded that Dwyer could not perform any past relevant work, but could

perform other jobs existing in significant numbers in the national economy, such as flower picker, harvest fruit worker, and harvest vegetable worker. (Tr. 24–25.) Accordingly, the ALJ found Dwyer not disabled. (Tr. 25.) This lawsuit timely followed.

## II. LEGAL STANDARD

Review of the Commissioner's (and, by extension, the ALJ's) decision denying disability benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the Commissioners' decision is supported by substantial evidence, the court must view the record as a whole considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh the evidence or substitute its judgment for that of the ALJ. And even if the evidence

3

preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### III. DISCUSSION

Dwyer's sole issue on appeal is whether the ALJ erred in evaluating the medical opinions of Dr. Stephen Cotton, Ph.D., Dwyer's treating psychologist, and Scott Kaplan, Psy.D., a consultative psychologist. (Doc. 21 at 16–25.) The Commissioner contends there is no error. (Doc. 27 at 3–12.) Because the Court finds that the ALJ erred in evaluating Dr. Kaplan's opinion, it will not address the ALJ's evaluation of Dr. Cotton's opinion, as the Commissioner's analysis may change on remand.

In 2017, the Social Security Administration (SSA) revised the rules it uses to evaluate medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). The final rules became effective in March 2017. *Id.*; *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). Because Dwyer filed his claims after that date (Tr. 15, 325–26), the revised regulations apply here.

When dealing with a medical opinion, the ALJ must consider its persuasiveness using several factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, which includes (i) length of the treatment

4

relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors." 20 C.F.R. § 416.920c(a) & (c)(1)-(5). Supportability and consistency "are the most important factors" in determining persuasiveness. *Id.* § 416.920c(b)(2). And because of their importance, the ALJ must explain "how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* "Supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Welch v. Comm'r of Soc. Sec.*, No. 6:20-cv-1256-DCI, 2021 WL 5163228, at *2 (M.D. Fla. Nov. 5, 2021).

Turning to the facts here, Dr. Kaplan completed a Memory Assessment report on Dwyer's behalf as part of his application for social security benefits. (Tr. 948–51.) As part of the evaluation, Dr. Kaplan administered the Wechsler Adult Intelligence Scale-4th Edition (WISC-IV) test which revealed a Full-Scale IQ score of 92, placing Dwyer within the average range of intellectual functioning. (Tr. 950.) Dr. Kaplan also administered the Wechsler Memory Scale-4th Edition (WMS-IV) test. Dwyer performed within the low average range for visual working memory, borderline range for visual and immediate

5

memory, and mentally deficient range for auditory and delayed memory. (Tr. 950.)

Based on his assessment and Dwyer's medical records, Dr. Kaplan opined that Dwyer was likely to experience mild impairments in understanding one and two-step tasks, moderate impairments understanding complex tasks, moderate to marked impairments getting along in social settings, and marked impairments adapting. (Tr. 948–51.)

The ALJ rejected Dr. Kaplan's opinions, explaining:

> Also considered was the medical source statement of Dr. Scott Kaplan the claimant would have a mild limitation to understand, remember, and carry out simple instructions; moderate limitation to make judgment on simple work-related decisions; and marked limitation in interacting appropriately with the public, supervisors, and co-worker [sic] and to respond appropriately to usual work situations and changes. (Ex. 34F) The opinion is not persuasive as it is not supported by his own examination findings and the results of IQ testing which revealed a Full Scale IQ of 92, which average [sic], and memory test results that overall were not below average. It is also inconsistent with the opinion of the medical expert.

(Tr. 23.) Thus, in discounting Dr. Kaplan's opinions, the ALJ relied, in part, on the WMS-IV test results, which he found "overall were not below average." (Tr. 23.)

As Dwyer correctly argues, the ALJ "erred in stating that [Dwyer's] scores on the Weschler Memory Scale were not below average." (Doc. 21 at 23.) Indeed, other than the visual working memory score, which placed him in the

6

low average range, Dwyer performed in the borderline range for visual and immediate memory, and mentally deficient range for auditory memory and delayed memory. (Tr. 950.) There was no basis for the ALJ to conclude that "[t]he results of the Wechsler Memory Scale-4th edition (WMS-IV) revealed memory subtests were variable, but not below average." (Tr. 18; *see also* Tr. 21 (stating "[t]he results of the WAIS-IV revealed a Full Scale IQ of 92 which is average, while his memory under the WMS-IV revealed his scores were variable, but none below low average").)

The error is also not harmless. An error is harmless if it does not affect the outcome or a party's substantial rights. *Perry v. Astrue*, 280 F. App'x 887, 893 (11th Cir. 2008). The ALJ relied on the memory test results in the sequential evaluation process, both at step three to assess Dwyer's limitations in the areas of understanding, remembering, or applying information, and at step four to assess Dwyer's RFC. (Tr. 18–19, 21, 23.) Further, when determining the consistency of Dr. Kaplan's opinion with another medical expert, the ALJ relied on the fact that the memory test results "were not below average." (Tr. 23.) Because the ALJ relied on incorrect memory test results throughout his decision, including in building the RFC, the Court cannot say the error was harmless. *See, e.g.*, *Baez v. Comm'r of Soc. Sec.*, 657 F. App'x 864, 870 (11th Cir. 2016).

7

The Commissioner argues that the ALJ's reasons for discounting Dr. Kaplan's opinion are supported by substantial evidence, citing to several examples from the record. (Doc. 27 at 11–12.) For instance, the Commissioner points to examination treatment notes indicating normal cognition, concentration, and insight, and intact judgment. (*Id.*; *see also* Tr. 53, 825, 832–33, 940–41, 972, 975, 979, 985.) The Commissioner is essentially asking the Court to re-weigh the evidence, which is something it cannot do. *See Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) ("[W]e will not affirm simply because some rationale might have supported the ALJ's conclusion[.]"); s*ee also Bloodsworth*, 703 F.2d at 1239 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Secretary.").

The Court cannot determine whether the final decision is supported by substantial evidence because the ALJ failed to consider that Dr. Kaplan's assessment revealed memory scores in the borderline and mentally deficient ranges. Accordingly, the Court finds that the case must be reversed and remanded.

Accordingly, it is **ORDERED**:

(1) The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), REVERSING the Commissioner's final decision and REMANDING this matter with the following

8

instructions: (a) reevaluate Dr. Scott Kaplan's January 6, 2021, Memory Assessment report, including the results of the Wechsler Memory Scale test; and (b) conduct any further proceedings deemed appropriate.

(2) The Clerk is further directed to close the file.

**ENTERED** in Fort Myers, Florida this December 8, 2022.

_Kyle C. Dudek_
Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record